**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Vernon POWELL, Defendant–Appellant.**

**No. 88–3489.**

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1989.

Decided Jan. 31, 1990.

Thomas Daley (argued), Office of the U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Michael Dwyer (argued), Office of the Federal Public Defender, St. Louis, Mo., for defendant-appellant.

Before WOOD, Jr., EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Defendant-appellant Vernon Powell appeals his conviction of five drug-related charges. He argues that two counts of his indictment were multiplicitous, that his sentence for a firearm offense constituted cumulative punishment and that the district court improperly excluded the guilty plea testimony of a co-conspirator. We affirm in part and reverse in part, and remand this case to the district court with instructions to vacate one of the two conspiracy convictions and to resentence the defendant accordingly.

## I. Facts

Robert Heet, a co-conspirator but not a defendant in this action, was trying to pressure an individual named Rick Taylor into selling cocaine for him. Heet told Taylor that if he knew anyone who wanted large amounts of cocaine, that he should go through him (Heet), but for smaller amounts, Taylor should go through defendant-appellant Vernon Powell. Powell subsequently visited Taylor's home. He asked Taylor about a debt that Taylor and his girlfriend owed to Heet for cocaine, indicating that he (Powell) worked for Heet. Taylor explained to Powell that he was not working steadily but would pay the debt. He then got angry with Powell and told him not to return.

Taylor thereafter became a cooperating individual with the Drug Enforcement Administration ("DEA"). After he started cooperating with the government, he telephoned Heet on April 27 and 29, 1988, to inquire about purchasing cocaine. On May 2, 1988, Taylor and DEA undercover agent Dean Duke purchased an ounce of cocaine from Heet for $1,600.00. Neither Powell nor his co-conspirator Robert Sawdy were present at this transaction.

Taylor met with Heet later in May about setting up a $20–25,000.00 drug deal. Taylor indicated that Duke wanted cocaine, but Heet suggested a package deal of partly cocaine and partly methamphetamine ("crystal"). On May 19, 1988, Taylor called Heet twice concerning this deal. At a meeting later that day, Taylor and Heet reached a tentative agreement regarding this deal, which was to take place on May 26, 1988. During this meeting, Heet indicated that if anything funny happened, that others would shoot; that is, that he would be accompanied by other people who were armed. Telephone records admitted at

Powell's trial show that a five-minute toll call was placed from Heet's phone to Powell's phone approximately one hour after the conclusion of this meeting.

The sale on May 26, 1988 was audio- and videotaped. Heet and Powell arrived by car at the parking lot of the Central Hardware Store in Fairview Heights, Illinois. This was the same location as the May 2, 1988, drug transaction. While Taylor pretended to be having trouble with his truck, Heet took a red toolbox from the trunk of his car and handed it to Richard Klekamp, the undercover agent accompanying Taylor.

When Taylor questioned Heet as to who Powell was, Heet responded "he's one of ours," and "he's a bad guy." The video and audio tapes show Powell arriving in Heet's automobile, occupying the front passenger seat. During the drug transaction, Powell first stood by the front passenger door of the car. He then proceeded to the rear of Heet's car, and then moved to the driver's side of Heet's car and then paused at the front of Taylor's truck. Powell then positioned himself between Taylor and the driver's door of Taylor's truck, during the time when Klekamp was testing for the presence of cocaine. After observing the testing activity, Powell moved back to the front passenger door of Heet's car. When it was discovered that the contents of the toolbox included cocaine, Heet, Powell and Sawdy were arrested.

In the red toolbox that Heet gave to Klekamp, government agents found approximately twelve ounces of cocaine and eight ounces of methamphetamine. Moreover, agents found a .38 caliber revolver in the glove compartment of Heet's car, and found a loaded .22 caliber pistol and two small packages of cocaine underneath a floor mat and nearly underneath the front portion of the driver's seat. On Powell's person, government agents found a small plastic bag of cocaine and an address book. The address book contained Heet's phone number, and approximately eleven pages of drug-related notations. The agents also recovered a loaded pistol-grip shotgun and a .38 caliber revolver from Sawdy's pickup.

These two items, however, were excluded from evidence. A search of Heet's home recovered additional cocaine and crystal and records pertaining to Heet's drug activities.

The defendants were charged in a nine-count indictment. Heet pleaded guilty to all nine counts. Only Counts One, Two, Three, Four and Eight related to Powell. Count One charged a conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two charged a conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Three charged aiding and abetting in the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Four charged aiding and abetting in the distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count Eight of the indictment charged the using of a firearm in relation to the drug trafficking crime of distribution of cocaine, in violation of 18 U.S.C. § 924(c)(1). Powell was tried separately from his co-conspirators and convicted of all five counts.

At trial, Powell called Heet as a witness. Heet, however, asserted his fifth amendment privilege against self-incrimination and therefore was unavailable to testify. Upon Powell's request, the district court admitted portions of Heet's testimony at a detention hearing on July 6, 1988. The district court refused, however, to admit statements made by Heet at his guilty plea hearing of September 16, 1988. During both the detention hearing and the guilty plea hearing, Heet indicated that Powell knew nothing about the guns in Heet's car, and that Powell knew nothing about the May 26, 1988 drug transaction. Powell appeals this conviction.

## II. Discussion

### A. *Multiplicitous Counts in the Indictment*

As noted above, one count of the indictment alleges a conspiracy to distribute cocaine, while another count of the indictment alleges a conspiracy to distribute methamphetamine. Powell maintains that

these are one conspiracy, not two. Thus, the indictment is multiplicitous, he argues, because it divides what really is one conspiracy into two conspiracies. In the key case in this area, *United States v. Castro*, 629 F.2d 456 (7th Cir.1980), we said:

> In proving that the first and second alleged conspiracies are one, a defendant traditionally has been required to meet the "same evidence" test, that is, to show that the evidence required to support conviction in one of the prosecutions would have been sufficient to support a finding of guilt in the other prosecution.... This test, however, would seldom prevent multiple prosecutions in narcotics conspiracy cases, such as this one, because the Government can shape the overt acts charged in each indictment and thus, under the guise of prosecutorial discretion, advance the proposition of one conspiracy's being capable of proof in several [counts of the same indictment] requiring different evidence for each conviction. To determine whether a conspiracy has been subdivided arbitrarily, ... courts therefore will look to both the [indictment] and the evidence and consider such factors as whether the conspiracies involve the same time period, alleged co-conspirators and places, overt acts, and whether the two conspiracies depend upon each other for success. Where several of these factors are present, the conclusion follows that the alleged illegal combinations are not separate and distinct offenses.

*Id.* at 461 (citations omitted).[1] *See also United States v. Dempsey*, 806 F.2d 766, 767–68 (7th Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 497 (1987); *United States v. Chiattello*, 804 F.2d 415, 418 (7th Cir.1986); *United States v. Cerro*, 775 F.2d 908, 913 (7th Cir.1985); *United States v. West*, 670 F.2d 675, 681 (7th Cir.),

*cert. denied*, 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982). Other circuits also have considered whether the indictments (or the different counts thereof) charge the same statutory offenses. *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir.1983), *cert. denied*, 469 U.S. 817, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984) (collecting cases).

■ In this case, Counts One and Two of the indictment are multiplicitous under the *Castro* test. First, the time periods alleged in Counts One and Two of the indictment overlap completely. Count One alleges a conspiracy from May 1, 1987 to May 26, 1988, and Count Two alleges a conspiracy from August, 1987, to May 26, 1988.[2] There is no evidence establishing that in August of 1987, Powell and Heet entered into a new, separate, and distinct agreement to distribute methamphetamine. Moreover, both conspiracies name the same three conspirators: Heet, Powell, and Sawdy. Third, both conspiracies involve agreements to violate 21 U.S.C. § 841.

We agree with Powell, moreover, that the nature and scope of these two agreements are identical. First, the red toolbox that Heet delivered to Klekamp on May 26th in Powell's presence contained both cocaine and methamphetamine. The notebook seized from Powell on the day of the arrest, moreover, contained notations concerning both cocaine and methamphetamine. Notes seized by the government from Heet's residence referring to Powell also referred to both cocaine and methamphetamine. There was no evidence that there were two separate conspiracies involving different places where events which related to only one conspiracy occurred.

Thus, the evidence does not support the government's theory that Powell joined the

---

1. *Castro* and many of its progeny are cases involving two indictments which, the defendants maintain, charged the same conspiracy. *Castro*'s test for whether several conspiracies are in fact one, however, applies equally to the context of multiplicity between the counts in one indictment. *Cf. United States v. Cerro*, 775 F.2d 908, 913 (7th Cir.1985).

2. Although the indictment says that the second conspiracy only went to May 21, 1988, the parties agree that the ending date of the alleged conspiracy is in fact May 26, 1988. Powell's brief mistakenly indicates that the starting date of the first alleged conspiracy was May 1, 1988, and not May 1, 1987, but we believe that this stems from an innocent misreading of the indictment.

first alleged conspiracy, involving only cocaine, when he helped Heet collect Taylor's drug debt to him, and that the second conspiracy, involving only methamphetamine, took place between Heet, Powell, and those persons in their records, with the two conspiracies intertwining when Heet substituted methamphetamine as part of the second cocaine deal with the undercover agent. Rather, the facts of this case show a single conspiracy involving both cocaine and methamphetamine, and the indictment was multiplicitous.

### B. *Cumulative Punishment on Firearm Count*

■ Powell maintains that his conviction on Count Eight of the indictment (carrying a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)) violates double jeopardy because it constitutes multiple punishment for the same offense without explicit congressional authorization of such punishment. Powell first argues that the conspiracy in Count One (assuming, as we have, that this count and Count Two are in fact one conspiracy) and the § 924(c)(1) violation in Count Eight are the same offense for purposes of double jeopardy. Second, he maintains that even if they are not the same offense for purposes of double jeopardy, the only basis for his liability for this offense was co-conspirator liability under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), and Congress has not clearly expressed the intent to impose cumulative punishment when a defendant is guilty of a § 924(c) violation under a theory of vicarious liability.[3] Thus, Powell contends, his sentence constitutes cumulative punishment without a clearly expressed legislative intent. We disagree.

Section 924(c)(1) of Title 18 of the United States Code provides in relevant part:

Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

Powell argues that our opinion in *United States v. Gironda*, 758 F.2d 1201 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985), does not control this case. He argues that *Gironda* is distinguishable for two reasons. First, Powell maintains, *Gironda* is incorrect because it did not apply the test in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), for determining when two statutes create separate offenses. They only do so, said the Supreme Court, when "each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182; *see also Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (Supreme Court held that District of Columbia felony murder statute violated double jeopardy where proof of felony murder required proof of every element of the underlying offense). Second, Powell maintains that *Gironda* is inapplicable because it involves the prior version of the statute, which required that the firearm be carried *unlawfully* during the commission of the felony, while the current version of the statute does not require this.

Contrary to Powell's assertion, we need not decide whether these two offenses are the "same offense" under *Blockburger*. In *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the Supreme Court held that where cumulative punishment under two statutes is specifically authorized, regardless of whether these two statutes create the "same offense" under the *Blockburger* test, "the

---

**3.** We have interpreted *Pinkerton* to mean that "each conspirator may be 'liable for overt acts of every other conspirator done in furtherance of the conspiracy.'" *United States v. Gironda*, 758 F.2d 1201, 1211 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985)

(citations omitted). Thus, we held that co-conspirators can be liable under *Pinkerton* for a firearm offense that is not the objective of the conspiracy, so long as it is committed in furtherance of it. *Id.*

prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Hunter*, 459 U.S. at 369, 103 S.Ct. at 679. Thus, in a case where Congress specifically authorizes cumulative punishment, whether the two statutes "flunk" the *Blockburger* test is irrelevant. *Cf. United States v. Molina–Uribe*, 853 F.2d 1193, 1208 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989) (Congress specifically authorized cumulative punishment under 18 U.S.C. §§ 1111, 1114 and 18 U.S.C. § 924(c)(1); therefore, under *Hunter*, defendant's conviction and sentence under 18 U.S.C. § 924(c)(1) do not violate the double jeopardy clause regardless of the result under *Blockburger*). Because we determine later in the opinion that Congress specifically authorized cumulative punishment in this situation, we need not decide whether the conspiracy and the firearm offense alleged in the indictment are the same offense under *Blockburger*.

The government disputes Powell's assertion that the only theory under which he could have been convicted of violating § 924(c)(1) is a vicarious liability theory. We need not resolve this dispute, however.[4] Even if Powell only could be liable for this offense under a *Pinkerton* theory, it is clear to us that Congress intended liability under 18 U.S.C. § 924(c)(1) to extend to those persons who are liable for the underlying offense only as co-conspirators under the *Pinkerton* doctrine. Powell maintains that Congress has expressed no intent, either directly or in the legislative history of § 924(c), that co-conspirators should be liable under that statute based on a *Pinkerton* theory, and application of *Pinkerton* to a § 924(c)(1) violation therefore contravenes double jeopardy. We rejected a similar argument in *Gironda*, 758 F.2d at 1211–14, and we do so here as well.

The original version of § 924(c) was enacted as part of the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1223

(1968). The purpose of this legislation was to strengthen the federal control over interstate and foreign commerce in firearms. In amending Title 18, Congress specifically was concerned about the growing use of firearms in violent crimes. *United States v. Johnson*, 658 F.2d 1176, 1180 (7th Cir. 1981) (quoting H.R.Rep. No. 1577, 90th Cong.2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 4410, 4411–12). Congressman Poff, the representative who proposed amending the Gun Control Act of 1968 to include the original version of § 924(c), intended the statute "to persuade the man who was tempted to commit a federal felony to leave his gun at home." 114 Cong.Rec. 22231 (1968).

In 1986, the then-current version of the statute was amended to include drug trafficking crimes. Pub.L. No. 99–308, § 104(a), 100 Stat. 456. Section 924(c)(2) of Title 18 of the United States Code defines the term "drug trafficking crime" as referring to "any felony punishable under the Controlled Substances Act (21 U.S.C. 801, et seq.)."

In *Gironda*, we rejected the argument that application of *Pinkerton* to an earlier version of § 924(c) either contravened legislative intent of the statute in general, or ran contrary to legislative intent by subjecting defendants to multiple penalties for the same act. We noted:

> By applying *Pinkerton* to § 924(c)(2), courts may encourage some conspirators to pressure other conspirators to leave their guns at home. As the government argues in its brief, "if the use or unlawful possession of a firearm is an overt act done in furtherance of the conspiracy or is a natural consequence of it, then all co-conspirators, as agents of each other, should be responsible for it and are in a position to preclude that act."

758 F.2d at 1214. We conclude, therefore, that Congress intended to authorize cumulative punishment under the circumstances

---

**4.** The government asked for, and received, a *Pinkerton* instruction at trial. It nonetheless maintains that the jury could have found Powell directly liable under § 924(c)(1). Its argument centers around the meaning of "carrying" in 18 U.S.C. § 924(c)(1). *See United States v. Johnson*, 658 F.2d 1176, 1181 (7th Cir.1981) (interpreting prior version of statute); *accord United States v. Machado*, 804 F.2d 1537, 1547–48 (11th Cir.1986) (same).

present in this case, and thus Powell's conviction on Count Eight of the indictment does not violate double jeopardy.

### C. *Exclusion of Heet's Guilty Plea Statements*

At trial, the defense wanted to call Robert Heet as its witness. In a hearing in chambers, Heet informed the trial judge that, if called, he would invoke his fifth amendment privilege against self-incrimination. This rendered Heet unavailable within the meaning of Rule 804 of the Federal Rules of Evidence. *United States v. Silverstein*, 732 F.2d 1338, 1346 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). Defense counsel then informed the court that he wanted to offer into evidence on Powell's behalf former testimony of Heet from his detention hearing and from his guilty plea hearing. The district court ruled that the detention hearing testimony was admissible into evidence, but the guilty plea hearing testimony was not. On appeal, Powell argues that the testimony from Heet's guilty plea hearing should have been admitted under Rule 804(b)(1) of the Federal Rules of Evidence.[5] Fed.R.Evid. 804(b)(1) provides in part:

> **(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> > **(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony

by direct, cross, or redirect examination.

■ In this case, it was not error for the district court to exclude Heet's guilty plea hearing testimony. The district judge, not counsel, questioned Heet at the plea hearing. Powell argues, however, that the government "by [its] presence at the plea hearing, ... had the opportunity on [its] own or through the court to develop Heet's testimony about his involvement in the conspiracy." Even if the government's presence at Heet's plea hearing gave it the "opportunity" to cross-examine Heet required by the rule, the government does not, as it points out in its brief, have the same motive at a plea hearing as it does at other proceedings. The prosecution's motive at a guilty plea hearing is to assure that the plea is voluntary and that a factual basis exists for it. *United States v. Lowell*, 649 F.2d 950, 965 (3d Cir.1981). This responsibility, moreover, rests primarily with the trial judge. *Id.* Here, although Heet denied at his guilty plea hearing that he conspired with Powell and Sawdy, he admitted to conspiring with others in committing the offenses in Counts One and Two of the indictment. Thus, the government did not have incentive to pursue the issue of Powell's involvement.

■ Even if it were error for the district court to refuse to admit this testimony at Powell's trial, this error was harmless. To be sure, the right to present a defense is based in part on a criminal defendant's right, under the sixth and fourteenth amendments, to compulsory process for obtaining witnesses. *See Washington v. Tex-*

---

**5.** Powell also argues that the district court should have admitted Heet's guilty plea statements as statements against penal interest under Fed.R.Evid. 804(b)(3) and under the residual exception to the hearsay rule in Fed.R.Evid. 804(b)(5). Because Powell did not cite either of these rules at trial in arguing for admissibility, he is precluded from raising such arguments on appeal absent a showing of plain error. Fed.R. Evid. 103(a)(2), 103(d); Fed.R.Crim.P. 52(b); *United States v. Edwards*, 696 F.2d 1277, 1281 (4th Cir.), *cert. denied*, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983). In order for plain error to exist, there must have been a "miscarriage of justice," which "implies the conviction

of one who but for the evidence probably would have been acquitted." *United States v. Smith*, 869 F.2d 348, 356 (7th Cir.1989) (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985)). We cannot say that Powell would have been acquitted had this evidence been admitted. First, there is other evidence indicating Powell's participation in the conspiracy. Second, the district court admitted into evidence Heet's statements at his detention hearing, wherein he denied Powell or Sawdy's knowledge of his activities.

*as,* 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967). We have said on numerous occasions that, in order to determine whether a constitutional violation has occurred, we must examine whether the testimonial evidence to be presented "was relevant, material, and vital to the defense, and whether the exclusion of that evidence was arbitrary." *United States ex rel. Ashford v. Director, Ill. Dep't of Corrections,* 871 F.2d 680, 686–87 (7th Cir. 1989); *Lange v. Young,* 869 F.2d 1008, 1011 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 2440, 104 L.Ed.2d 996 (1989) (citing *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982); *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973)). Here, we cannot say that this evidence was "vital to the defense," because the district court had admitted Heet's statements he made at his detention hearing, wherein he exculpated Powell and Sawdy. Thus, Powell was able to present this defense at trial. *Lange,* 869 F.2d at 1011.

### III.  Conclusion

■ In summary, although we agree that Counts One and Two of the indictment under which Powell was charged were multiplicitous, we affirm all the other issues raised as error. Powell argues that his having been improperly charged with two conspiracies, and not one, warrants a new trial. This never has been the law. Rather, a multiplicitous indictment warrants resentencing. *See, e.g., Braverman v. United States,* 317 U.S. 49, 54–55, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) ("The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute.... For such a violation only the single penalty prescribed by the statute can be imposed").

Powell was sentenced to 54 months on each of the two conspiracy counts, which sentences were to run concurrently. Because of the $50.00 special assessment imposed on each count, however, the sentences are by definition not concurrent. *Cf. Ray v. United States,* 481 U.S. 736, 107 S.Ct. 2093, 95 L.Ed.2d 693 (1987) (per cu-

riam) (where the district court imposed a $50.00 assessment on each of three counts, and petitioner's liability to pay this total depended on the validity of each of his three convictions, the sentences were not concurrent; therefore, the Court of Appeals improperly applied "concurrent sentence doctrine"). Thus, the appropriate course of action is to remand this case to the district court with instructions to dismiss one of the two conspiracy counts and to resentence Powell. *Cf. Cerro,* 775 F.2d at 916–17; *United States v. Calhoun,* 510 F.2d 861, 869 (7th Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.