**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Byron W. MATTHEWS, Defendant– Appellant.**

**No. 90–5157.**

United States Court of Appeals, Tenth Circuit.

Aug. 21, 1991.

James L. Swartz, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the brief), Tulsa, Okl., for plaintiff-appellee.

Randal D. Morley, Tulsa, Okl., for defendant-appellant.

Before HOLLOWAY, Chief Judge, BRIGHT, Senior Circuit Judge *, and SEYMOUR, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Byron Matthews appeals his convictions and Guidelines sentence for conspiracy, possession with intent to distribute cocaine base, and use of a firearm in a drug trafficking offense. *See* 21 U.S.C. §§ 846, 841(a)(1) (1988); 18 U.S.C. § 924(c)(1) (1988) (amended 1990). Matthews disputes the voluntariness of his confession, the validity of the Government's search warrant and the sufficiency of the evidence for the firearms count. Matthews further contends that the court erroneously enhanced his sentence based on a kilogram of cocaine base that his co-conspirators acquired before he entered the conspiracy. We affirm Matthews' convictions for conspiracy and drug distribution, but reverse his conviction on the firearms count. We also reverse Matthews' sentence insofar as it includes the additional kilogram of cocaine base.

## I.

The indictment charged that on March 10–11, 1989, Matthews conspired with members of an ongoing cocaine conspiracy to sell three ounces of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. The indictment further charged Matthews individually with planning to sell the above cocaine amount and with using firearms in connection with this offense in violation of 18 U.S.C. § 924(c).

At trial, the Government relied heavily on the testimony of Bernard Saunders, an unindicted cooperating witness. In December 1988, a California drug distributor asked Saunders to help him set up operations in Tulsa, Oklahoma. Thereafter, Saunders rented a Tulsa apartment, which eventually became a "safe house" for an ongoing drug conspiracy.

According to Saunders, Matthews and another party, Troy Coleman, arrived from California late in the evening on March 10, 1989. Saunders expected Coleman, but had never seen Matthews in Tulsa before. The two men had two to three ounces of crack cocaine with them. They met with members of the conspiracy and agreed to help sell the cocaine the next morning. However, Saunders, who worked both sides, tipped off the police.

Within hours, the police obtained a warrant and raided the apartment. During the raid, the police found Matthews in a bathroom attempting to flush fourteen grams of cocaine base down the toilet. The police recovered roughly two more ounces of cocaine base from other locations in the apartment. The police also confiscated two

---

* Honorable Myron H. Bright, United States Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

pistols from beside a TV stand in the living room. The pistols could be seen by a person sitting on the floor watching television. According to Saunders, members of the conspiracy routinely took the weapons with them on drug-selling excursions in order to protect the drugs and cash they carried.

After receiving *Miranda* warnings, Matthews agreed to make a statement. Matthews told the officers that he had been in California the previous night when Coleman approached him and asked to be driven to Tulsa. Coleman promised Matthews an easy $1,500. Once in Tulsa, Matthews met the other conspirators and agreed to help distribute the cocaine base in question.

The jury convicted Matthews on all counts. At sentencing, the district court determined that the conspiracy Matthews joined had previously distributed a kilogram of cocaine base. The court attributed this amount to Matthews under the Sentencing Guidelines' relevant conduct provisions, U.S.S.G. § 1B1.3(a)(2), and imposed a 360–month sentence.

This appeal followed.

## II.

### A. Confession

Matthews contends that the statements he made to police on the day of arrest should have been suppressed as involuntary.[1] He argues that, among other things, the officers used trickery and false promises to induce his statements. We disagree.

■ The fifth amendment's privilege against self-incrimination prohibits the admission of incriminating statements where governmental acts, threats or promises cause the defendant's will to become overborne. *United States v. Fountain,* 776 F.2d 878, 885 (10th Cir.1985). We must look at the totality of the circumstances to determine whether this happened. *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 1251–52, 113 L.Ed.2d 302 (1991). The issue presents a legal question, requiring de novo review. *See id.* 111 S.Ct. at 1252.

■ After reviewing the record, we conclude that Matthews made the statements voluntarily. The officers testified that Matthews received *Miranda* warnings but nevertheless offered to cooperate. The officers also testified that they agreed to release Matthews pending further investigation if he accompanied them to the Tulsa airport and identified certain drug operators believed to be arriving from California later that day. The officers subsequently released Matthews even though he remained unable to make the requisite identification at the airport. Finally, the officers testified that they assured Matthews that no state charges would be filed against him and that federal charges probably would not ensue if Matthews continued to cooperate with authorities. After his release, however, Matthews called the officers only twice in a three-month span and provided no further information. As Matthews failed to keep his end of the bargain, he cannot now claim entitlement to its benefits. *See Fountain,* 776 F.2d at 884.

### B. Search Warrant

■ Matthews next argues that the firearms seized from the living room of the apartment must be suppressed as exceeding the scope of the warrant.[2] He points out that the police had reason to suspect that firearms would be present, yet made no request to include them in the warrant. The Government concedes that the warrant, which authorized seizure of "cocaine, fruits, instrumentalities, monies, notations relating to the offense thereof, [and] evidence that establishes occupancy or control

---

**1.** Matthews also argues that his statements should be suppressed as the product of an unlawful search, arrest and detention. These arguments cannot be supported on the facts of this case.

**2.** Matthews also attacks a police search of his automobile, parked in the apartment complex parking lot. The Government admits that the warrant contained no grant of authority to search Matthews' vehicle. Nevertheless, Matthews suffered no prejudice because the Government did not introduce any items seized from Matthews' vehicle into evidence at trial.

of the residence," failed to describe the firearms with particularity. The Government nevertheless contends that the officers justifiably seized the weapons after discovering them in plain view. Based on the Supreme Court's recent analysis in *Horton v. California,* — U.S. ——, 110 S.Ct. 2301, 2305–11, 110 L.Ed.2d 112 (1990), we agree.

In *Horton,* the Supreme Court revisited the plain-view doctrine. It dismissed as dicta a previous statement in *Coolidge v. New Hampshire,* 403 U.S. 443, 469, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971) (Stewart, J.) (plurality opinion), requiring the discovery of evidence in plain view to be inadvertent. *Horton,* 110 S.Ct. at 2308. The Court nonetheless embraced *Coolidge* insofar as it held that plain view *alone* can never justify a warrantless seizure and went on to impose two conditions. *Id.* at 2307–08. First, the object's incriminating character must be immediately apparent. *Id.* at 2308. Second, the officer must have lawful access to the object itself. *Id.*

We think the seizure in this case satisfied both conditions. Here, the officers came across the weapons during the course of a lawful search for illegal drugs. Moreover, it has become common knowledge that drug operators frequently acquire weapons for use in connection with drug activities. Hence, we think that the weapons' accessibility and proximity to illegal drugs satisfy the condition that their incriminating character be immediately apparent to the officers.

## C. Sufficiency of the Evidence

For his third point, Matthews argues a failure of proof on the firearms count. *See* 18 U.S.C. § 924(c)(1). Matthews contends that no rational jury could find beyond a reasonable doubt that he used the firearms found in the living room during and in relation to the charged drug trafficking offense. Although this case presents a close issue, we agree.

Count III of the indictment charges that Matthews "did, during and in relation to a drug trafficking crime, to wit: Possession with Intent to Distribute a Controlled Substance, use or carry firearms." (Citation omitted). In *United States v. McKinnell,* 888 F.2d 669, 675 (10th Cir.1989), we held that a defendant "uses" a firearm under section 924(c)(1) where the firearm (1) is readily accessible, (2) forms an integral part of the defendant's criminal undertaking, and (3) increases the likelihood of success for that undertaking.[3]

 To be sure, the officers' discovery of the firearms in plain view suggests they were readily accessible. However, section 924(c) requires more than mere access to a firearm. *United States v. Sullivan,* 919 F.2d 1403, 1432 & n. 45 (10th Cir.1990) (2–1 decision). The firearm also must be used "during and in relation to" the charged drug trafficking offense. *Id.* To prove this necessary relation, the Government's evidence must support a finding that the defendant *intended* the weapon to be available for use during the drug transaction. *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988); *cf.* S.Rep. No. 225, 98th Cong., 1st Sess. 1, 314 n. 10 (1983) ("Evidence that the defendant had a gun in his pocket but did not display it, or refer to it, could nevertheless support a conviction for 'carrying' a firearm in relation to the crime if from the circumstances or otherwise it could be found that the defendant intended to use the gun if a contingency arose or to make his escape."), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10.

 We see no evidence here that Matthews intended to avail himself of the firearms in question. The record is devoid of evidence that Matthews ever handled the weapons or saw another conspirator do so in connection with cocaine activities. When the police raided the apartment, the weapons lay next to the TV—not in the hands of Matthews or any other conspirator. Moreover, the sole explanation for the presence of the weapons comes from Saunders' testimony that the firearms provided conspira-

---

3. No one contends that Matthews actually carried a firearm. Thus, we will confine our discussion to whether the Government has proved "use" under the statute.

tors with protection on drug-selling excursions. Yet, Matthews never went on a conspiracy drug-selling excursion.

Moreover, as to the second factor, we remain unable to locate any proof that the firearms formed an integral part of the criminal activity Matthews agreed to undertake. By Saunders' admission, Matthews had never been in town until his unexpected arrival the night before the raid. The record contains no indication that the conspirators ever discussed the weapons in Matthews' presence, or that Matthews knew their practice of carrying weapons during drug excursions. Furthermore, Saunders freely admitted that the firearms had been brought in at least two weeks prior to Matthews' arrival.

Under these circumstances, we think the Government failed to prove that Matthews intended or approved the use of firearms in connection with the criminal activity he undertook. The facts of Matthews' case are even more compelling than in *Sullivan, supra*, where we held that Mary Sullivan's mere constructive possession could not support a conviction for *use* of a firearm in drug trafficking. 919 F.2d at 1432. In that case, the evidence showed that Sullivan participated in a drug manufacturing conspiracy operating, in part, out of her home. The evidence further showed that Sullivan had seen her husband, also a conspirator, handling ammunition for the weapon in question, and that the weapon was stored in a cabinet in their master bedroom. On this evidence, we concluded that Mary Sullivan had constructive possession of the firearm, but held that this factor, without more, could not sustain a conviction for use of a firearm for a drug trafficking offense.

Like Sullivan, Matthews played no role in securing the weapons in question, and nothing suggests that he handled them. Additionally, Matthews joined the conspiracy only hours earlier and was a mere visitor to the residence where the police found the weapons and contraband. Accordingly, we conclude that the evidence cannot sustain Matthews' conviction on the firearms count.

### D. Sentencing Consideration

The Government seeks to hold Matthews accountable for approximately one kilogram of crack cocaine that the conspiracy distributed before Matthews joined it.[4] The Government contends that the Guidelines' relevant conduct provisions, U.S.S.G. § 1B1.3(a)(2), make Matthews responsible for all prior conduct of the conspiracy. We must agree with Matthews, however, that the relevant conduct provisions do not reach this far.

The Government bears the burden of proving uncharged conduct by a preponderance of the evidence. *United States v. Russell*, 905 F.2d 1439, 1441 (10th Cir.1990). As a late-entering co-conspirator, Matthews can be sentenced only for past quantities that he knew or should have known the conspiracy distributed. *United States v. Miranda–Ortiz*, 926 F.2d 172, 178 (2d Cir.1991); *see also United States v. Sanders*, 929 F.2d 1466, 1475 (10th Cir.) (drug quantity limited to time of marriage for wife who joined husband's heroin conspiracy), *cert. denied*, —— U.S. ——, 112 S.Ct. 143, —— L.Ed.2d —— (1991); *United States v. Willard*, 909 F.2d 780, 781 (4th Cir.1990) (defendant responsible only for known or reasonably foreseeable criminal conduct in furtherance of conspiracy); *cf. United States v. Wood*, 924 F.2d 399, 404–05 (1st Cir.1991) (conspiracy defendant's status as after-the-fact beneficiary does not turn wife's independent drug transaction into relevant conduct). In addition, the foreseeability of past misconduct must be evaluated in connection with the criminal activity Matthews agreed to un-

---

**4.** Additionally, the pre-sentence report (PSR) stated: "Investigators also learned that the co-conspirators were awaiting a one kilogram delivery of crack cocaine from Alonzo Smith." However, the district court did not rely on this statement in making its findings at sentencing.

Moreover, the Government made no serious attempt to prove the statement's accuracy, or to urge this quantity as an alternate basis for affirmance on appeal. Consequently, we need not address the issue of potential incoming cocaine in our discussion.

dertake. *See* U.S.S.G. § 1B1.3(a)(2), comment. (n. 1).

 After a thorough review, we see no indication that Matthews received information on the conspiracy's prior drug dealings. Moreover, the evidence strongly suggests that the scope of Matthews' agreement was narrow. He came into town to make a fast buck by selling two to three ounces of crack cocaine. Nothing in the record shows that the parties contemplated any more extensive relationship than this. We think it implausible that a person who undertakes a one-time drug deal in concert with others thereby assumes responsibility for the entire past misdeeds of his or her co-conspirators. *Accord United States v. North*, 900 F.2d 131, 133–34 (8th Cir.1990) (where conspiracy has limited objective, defendant not responsible for co-conspirator's independent drug activities); U.S.S.G. § 1B1.3, comment. (n. 1(e)).

Accordingly, Matthews may be sentenced only for the two or three ounces he agreed to distribute and not the amounts sold without Matthews' knowledge or agreement prior to his entry into the conspiracy. In view of our holding on this point, we need not address Matthews' remaining points of contention with the district court's drug quantity calculation.

### III.

We affirm Matthews' convictions for conspiracy and for possession with intent to distribute cocaine base. However, we reverse Matthews' conviction for use of firearms during and in relation to drug trafficking. We also reverse Matthews' sentence insofar as it includes a kilogram of cocaine base distributed prior to his joining the conspiracy and remand for resentencing based only on the two to three ounces supported by the record.

IT IS SO ORDERED.