**Ron GILLIS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 96–CV–0036J.

United States District Court, D. Wyoming.

Oct. 7, 1996.

Ron Gillis, Littleton, CO, pro se.

David Kubichek, Ass't U.S. Attorney, Casper, WY, for U.S.

### ORDER GRANTING MOTION UNDER 28 U.S.C. § 2255 and ORDER REVERSING AND VACATING SENTENCE

ALAN B. JOHNSON, Chief Judge.

This matter comes before the Court upon the Petition filed pursuant to 28

---

U.S.C. § 2255 by Ron Gillis. This Court has considered the petition and supporting memorandum, the government's response in opposition thereto, the file, records, correspondence, materials filed in support of and in opposition to the Motion, as well as all records and transcripts from the prior criminal proceedings in the case, and is fully advised in the premises. For the reasons stated below, the Court FINDS and ORDERS as follows:

### Background and Discussion

Petitioner, Ron Gillis, filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on February 13, 1996. By separate order, this Court required the government to respond. The government's opposition to the petitioner's Motion was filed August 22, 1996, and petitioner filed his response September 12, 1996. Gillis, at the time of filing the petition presently under consideration, was in custody at the federal correctional facility at FCI Englewood in Littleton, Colorado, after he had been tried and found guilty of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c). He was sentenced on April 18, 1990, to a term of 60 months on Count I (conspiracy; 21 U.S.C. § 846) and to a term of 60 months in Count II (possession of a firearm during a drug trafficking offense; 18 U.S.C. § 924(c)), with the terms of imprisonment for each count to be served consecutively. The Tenth Circuit of Appeals affirmed the convictions on August 12, 1991.

Subsequent to that time, the United States Supreme Court's decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) was rendered. In *Bailey*, the United States Supreme Court held that "[to] sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Bailey*, —— U.S. at ——, 116 S.Ct. at 509. The Supreme Court, in its opinion, described some of the activities falling within the "active employment" of a fire-

arm and those that do not. It did note however, that:

> "the inert presence of a firearm, without more, is not enough to trigger § 924(c)(1). Perhaps the nonactive nature of this asserted 'use' is clearer if a synonym is used: storage. A defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession."

*Bailey*, —— U.S. at ——, 116 S.Ct. at 508. Later in that opinion, the Supreme Court also stated the following with respect to the "carry" prong of § 924(c)(1):

> While it is undeniable that the active-employment reading of "use" restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. The "carry" prong of § 924(c)(1), for example, brings some offenders who would not satisfy the "use" prong within the reach of the statute. And Sentencing Guidelines § 2D1.1(b)(1) provides an enhancement for a person convicted of certain drug-trafficking offenses if a firearm was possessed during the offense.... But the word "use" in § 924(c)(1) cannot support the extended applications that prosecutors have sometimes placed on it, in order to penalize drug-trafficking offenders for firearms possession.

> The test set forth by the Court of Appeals renders "use" virtually synonymous with "possession" and makes any role for "carry" superfluous. The language of § 924(c)(1), supported by its history and context, compels the conclusion that Congress intended "use" in the active sense of "to avail oneself of." To sustain a conviction under the "use" prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime.

*Id.* at —— ——, 116 S.Ct. at 508–509.

The issues raised by Gillis in the instant § 2255 petition rely primarily on *Bailey* and its progeny in the circuit courts of this country. In his petition, Gillis asserts that his conviction pursuant to 18 U.S.C. § 924(c)(1)

is erroneous and should be reversed. With respect to his conviction based on the "use" prong of § 924(c)(1), the United States concedes that there is insufficient evidence to support Gillis's conviction under "use" of a firearm during or in relation to a drug trafficking offense under the *Bailey* analysis. However, the government argues that the evidence is sufficient to sustain defendant's conviction on the "carry" prong of 924(c)(1). This Court agrees with the defendant Gillis's assertions and believes that his petition for relief under 28 U.S.C. § 2255 should be granted in this case.

The Tenth Circuit has held that *Bailey* applies retroactively. *United States v. Wacker*, 72 F.3d 1453 (10th Cir.1995). In this case, Count Four of the Indictment charged as follows:

On or about April 22, 1988, in the District of Wyoming, RON GILLIS, during and in relation to a drug trafficking offense, to-wit: conspiracy to distribute methamphetamine, did use and carry a firearm;

In violation of 18 U.S.C. § 924(c).

The jury was instructed by the Court, prior to closing statements, as follows:

### INSTRUCTION NO. 31

The defendants, Ron Gillis and Gary Barkdoll, are charged with conspiracy to commit two drug trafficking crimes while in possession of a firearm. Under federal law it is unlawful for any person to use or carry a firearm during or in relation to a drug trafficking crime.

### INSTRUCTION NO. 32

To convict the defendants, Gillis and Barkdoll, of this crime, the government must prove the following beyond a reasonable doubt: One, these defendants had ready access to the firearm in question during or in relation to a drug trafficking crime. Second, that the firearm in question was an integral part of a drug trafficking crime. And third, that the availability of the firearm increased the likelihood that these defendants would succeed in their conspiracy to commit a drug trafficking crime.

To be convicted for this offense, it is not necessary that the defendant actually fired, displayed, or brandished the firearm in question.

### INSTRUCTION NO. 32a

If you find that guns were in a car that transported the defendants, Mr. Gillis and Mr. Barkdoll, to Gillette, Wyoming, on the date alleged in the indictment, then you will decide whether either defendant possessed the guns.

If two or more people had control of the gun(s) together, they had possession of the gun(s) jointly. But it is not enough that the defendants may have known about the gun(s). The defendant possessed the gun(s) only if he had control of the gun(s), either alone or together with someone else. Remember that the elements of this offense require more than mere possession. Instruction No. 32.

### INSTRUCTION NO. 33

If you find that the defendant, Ron Gillis, is guilty of conspiracy to commit the drug trafficking crimes alleged in Count 1 of the indictment, you may also find the defendant, Ron Gillis, guilty of using and carrying a firearm during or in relation to this conspiracy, provided you find the elements of using and carrying a firearm during or in relation to this crime as I have defined these elements in instruction No. 32.

### INSTRUCTION NO. 34

If you find that the defendant, Gary Barkdoll, is guilty of conspiracy to commit the drug trafficking crimes alleged in Count 1 of the indictment, you may also find the defendant, Gary Barkdoll, is guilty of using and carrying a firearm during or in relation to this conspiracy, provided you find the elements of using and carrying a firearm during or in relation to this crime as I have defined these elements in instruction No. 32.

## INSTRUCTION NO. 34a

The defendant, Ron Gillis, contends that he did not know of Marvin Aeschbacher's 1–pound methamphetamine; that he saw no drugs; that he participated in no delivery of any drugs; that he bought no drugs; that he attempted to convince Marvin Aeschbacher to turn himself in; that he made payment to Marvin Aeschbacher for Mr. Aeschbacher's motorcycle shop; and recommended that Mr. Aeschbacher hire an attorney. Mr. Gillis also contends that he did not use or carry a gun and did not see any guns.

## INSTRUCTION NO. 34b

It is Gary Barkdoll's contention that he was looking for motorcycle parts at Ron's Cycle Shop when he gave Ron Gillis a ride to Casper. In Casper he gave Marvin Aeschbacher and Ron Gillis a ride to Glenrock and then to Gillette, back to Glenrock, and then drove himself and Cindy Hanneman to Riverton.

Jury Instructions; see also Trial Transcript, February 1, 1990, at 21–23.

The analysis suggested by the Tenth Circuit in *United States v. Miller,* 84 F.3d 1244 (10th Cir.1996) guides this Court's decision in a case where the defendant is charged having violated 18 U.S.C. § 924(c)(1) by both using and carrying a firearm. The Tenth Circuit noted that the Supreme Court expressed no opinion regarding the appropriate remedy when it was faced with a nearly identical situation. The Supreme Court had remanded to the appellate court with directions to consider whether the "carry" prong of 18 U.S.C. § 924(c)(1) provided an alternative basis for upholding the convictions in that case.

Therefore, the Tenth Circuit was required to consider and to address that issue in *United States v. Miller,* 84 F.3d 1244 (10th Cir. 1996). Because this decision is very helpful in this case, the Court will quote extensively from the *Miller* decision. In its opinion, the Tenth Circuit Court of Appeals stated:

If the substantive law allows the jury to convict a defendant for an offense, here a violation of 18 U.S.C. § 924(c)(1), based on either of two alternative grounds, here that Mr. Hicks either "used" or "carried" the firearms, and the district court correctly instructs the jury regarding each ground, we must affirm the conviction if there is sufficient evidence to support it under either of the alternative grounds, even if there is not sufficient evidence to support the convictions under one of them. *Griffin v. United States,* 502 U.S. 46, 58–60, 112 S.Ct. 466, 473–75, 116 L.Ed.2d 371 (1991); *United States v. Pace,* 981 F.2d 1123, 1129 (10th Cir.1992) *cert. denied,* 507 U.S. 966, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). This analysis does not apply in this case, however, because the district court instructed the jury it could find Mr. Hicks "used" the firearms merely by concealing them in the van and keeping them readily available for use, which is incorrect under *Bailey. Bailey,* —— U.S. at ——, 116 S.Ct. at 509; *Wacker,* 72 F.3d at 1463. Because the instruction defining one of the two alternative grounds for conviction was legally erroneous, we must reverse the conviction unless we can determine with absolute certainty that the jury based its verdict on the ground on which it was correctly instructed. *Griffin,* 502 U.S. at 58–60, 112 S.Ct. at 473–75; *Pace,* 981 F.2d at 1130. The reason for this approach is simple: "Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law," *Griffin,* 502 U.S. at 59, 112 S.Ct. at 474, and may have intended to convict the defendant on a legally invalid ground, while rejecting the evidence supporting the legally valid one. We may be absolutely certain that the jury did not make such an unwitting error, if for example, there was no evidence whatsoever to support a conviction on the legally erroneous ground, *Pace,* 981 F.2d at 1130, or if the jury rendered a special verdict indicating it rejected the legally erroneous ground. [footnote omitted]

Here, the jury rendered a general verdict and there was sufficient evidence on which to base a finding Mr. Hicks "used" the firearms under the jury instructions the district court gave. It is therefore possible that the jury convicted Mr. Hicks solely because it found he "used" the fire-

arms merely by concealing them in the van, which directly conflicts with *Bailey,* and that the jury rejected the government's assertion Mr. Hicks "carried" them. We must therefore reverse Mr. Hicks's conviction under 18 U.S.C. § 924(c)(1). This conclusion brings us to a more difficult question: whether we must order a new trial. Our recent decision in *Wacker* is instructive, though not determinative. In *Wacker,* we concluded, in light of *Bailey,* that it was beyond a doubt that there was insufficient evidence to support the jury's finding the defendants charged in counts 2 and 12 of the indictment "used" firearms, *Wacker,* 72 F.3d at 1464, and we emphasized that the indictment did not allege the defendants "carried" firearms, *id.* at 1464 n. 8. We therefore reversed these convictions outright without remanding for a new trial. We went on to hold, however, that it was "a closer question whether the government presented sufficient evidence regarding the firearm charged in Count 7," and that "we cannot say how a jury might decide this issue if properly instructed under the law as defined by *Bailey.*" *Id.* at 1464–65. We therefore remanded the case for a new trial on that count, and gave the government an opportunity to obtain a conviction under the correct legal standard. *Id.* at 1465. We acknowledged that "reversal of a conviction on the grounds of insufficient evidence precludes retrial," *id.* at 1465 (citing *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)), but held that rule did not apply to Count 7, because we reversed not for "pure insufficiency of evidence," but because the "legal standard under which the jury was instructed and under which the government presented its proof was incorrect." *Id.* at 1465.

In light of *Wacker,* therefore, we will remand for a new trial only if the jury could have returned a guilty verdict if properly instructed. The jury could not have returned a guilty verdict in this case under the "use" prong of 18 U.S.C. § 924(c)(1). The record contains no evidence that Mr. Hicks ever even attempted to remove the firearms from the bags in which they were concealed, or that he mentioned their presence to anyone. As such, the evidence, demonstrated nothing but the "inert presence" which the supreme Court held was insufficient in *Bailey. Bailey,* —— U.S. at ——, 116 S.Ct. at 508.

We must next determine whether a properly instructed jury could have returned a guilty verdict under the "carry" prong of 18 U.S.C. § 924(c)(1). We defined the word "carry" for the first time in *United States v. Cardenas,* 864 F.2d 1528 (10th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). In *Cardenas,* we stated that "there is no evidence in the language of [18 U.S.C. § 924(c)] or its legislative history that Congress intended" the word "carries" to have a "different meaning than the legal meaning in 1968," the year the statute was enacted. *Id.* at 1535 (footnote omitted). We examined the pre–1968 definitions of the word "carry" and concluded that "[t]he legal consensus at the time of enactment of § 924(c) was that possession was a requisite element of 'carrying a weapon in a vehicle' but that in light of these definitions when a motor vehicle is used, 'carrying a weapon' takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle, itself, rather than the defendant's hand or pocket, and the requirement of possession, the exercise of dominion and control, consonant with the common legal definition of 'carrying a weapon in a vehicle' at the time of the enactment of 924(c), is precisely what distinguishes 'carrying' from here 'transportation.'" *Id.* at 1535–56.

*United States v. Miller,* 84 F.3d at 1257–1259.

The circuit court then continued by analyzing numerous cases involving convictions under the carry prong of § 924, clearly indicating that the pre-*Bailey* lines of cases continue to have significant persuasive value in § 924 "carry" cases. It then went on to determine, under the facts of that case, whether there was sufficient evidence to support a conviction under the "carry" prong of 18 U.S.C. § 924(c)(1) upon retrial. It concluded that a jury could have determined

that the defendant "carried" the firearm. However, it also went on to note that any conviction under § 924(c)(1) requires the government:

to prove the defendant carried a firearm "during and in relation to" a drug trafficking offense. To establish this nexus, there must be evidence that defendant *"intended* the weapon to be available for use during [a] drug transaction." [*U.S. v.*] *Nicholson,* 983 F.2d [983] at 990 [ (10th Cir.1993) ] (citing *United States v. Matthews,* 942 F.2d 779, 783 (10th Cir.1991)) (emphasis in original). Specifically, the government must prove the defendant availed himself of the firearm and that the firearm "played an integral role" in a drug trafficking offense. *Id.* The government can prove the firearm was readily accessible and that the defendant availed himself of it "by showing a close proximity between the firearm and the drugs." *United States v. Ramirez,* 63 F.3d 937, 946 (10th Cir.1995).

In this case, Mr. Hicks concedes that the firearm was in close proximity to the drugs. The black bag found in the rear of the van contained a firearm and scales with methamphetamine residue. The blue bag, also found in the rear of the van, contained 774.1 grams of methamphetamine. A package found under the right rear quarter panel of the van, contained 156.7 grams of marijuana. From this evidence or proximity of the firearm and drugs, the jury could have found that the firearm was readily accessible and that Mr. Hicks availed himself of the firearm. As a consequence, there was sufficient evidence Mr. Hicks intended the weapon to be available, that he availed himself of the firearm, and that the firearm had an integral role in a drug trafficking offense.

Our analysis indicates there is sufficient evidence for retrial of Mr. Hicks under 18 U.S.C. § 924(c)(1), carrying a firearm during and in relation to a drug trafficking crime. We therefore remand for a new trial on that charge.

*United States v. Miller,* 84 F.3d at 1260–1261.

In this case, the evidence on all issues relating to the gun charges against defendants Gillis and Barkdoll is equivocal. The Court has re-read the entire trial transcript and regards the evidence and testimony at trial as weak on all § 924 areas. One of the government's star witnesses, Cindy Hanneman, testified that she never saw guns and that no guns were involved. Marvin Aeschbacher, another "star" witness, testified that a gun was in the front console of the tan Toronado driven by Gary Barkdoll; however, his out-of-court statements prior to trial were that no guns were involved. At trial, Gary Barkdoll also testified the vehicle did not have a console in the front seat, but that there was an armrest that folded in the middle of the front. At trial, Barkdoll denied there were any guns in his vehicle on the date in question. During a three hour interrogation, when asked by law enforcement officers in December of 1988, Barkdoll admitted he had methamphetamine and guns under the armrest of the car.

However, with respect to Ron Gillis, there are no similar admissions or indications of any knowledge whatsoever that guns were available to him or known by him to be present in the vehicle on April 22, 1988. This is a "no drug" case. The only gun ever offered into evidence, a .357 Smith and Wesson revolver, was found in Mr. Gillis's home after he was arrested, long after the dates alleged in the Indictment. Marvin Aeschbacher was unable to testify that the revolver at trial was the revolver he claims was in the Barkdoll vehicle. In fact, Marvin Aeschbacher was not able to identify Gary Barkdoll in the courtroom. Debbie Gillis testified at trial that the gun in evidence at trial was her gun, that she had taken that gun as collateral from Michael Pryczynski in 1989. This testimony was uncontroverted.

While the evidence may have been sufficient to permit retrial of defendant Barkdoll on a properly instructed charge under the "carry" prong of § 924(c)(1), this Court believes there is not sufficient evidence to establish the required nexus under the *United States v. Miller* analysis quoted out in the foregoing portions of this order. It does not appear that there was a close proximity between defendant Gillis, the drugs, and the firearms alleged to have been involved in this

case. Where there is not sufficient evidence that the defendant intended a weapon to be available for use during a drug transaction and that the firearm had an integral role in a drug trafficking offense, retrial on the § 924(c)(1) charge with respect to defendant Ron Gillis is not appropriate in this case. *See also, United States v. Richardson,* 86 F.3d 1537, 1548–1549 (10th Cir.1996); *United States v. Smith,* 82 F.3d 1564, 1567–1568 (10th Cir.1996) (evidence insufficient to support conviction for carrying firearm during or in relation to drug trafficking offense; double jeopardy principles precluded retrial). Accordingly, and for the foregoing reasons, his conviction pursuant to 18 U.S.C. 924(c)(1) must be reversed outright and the relief sought by Ronald Gillis in his petition pursuant to 28 U.S.C. § 2255 must be granted. It is therefore

**ORDERED** that the "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" filed by Ron Gillis on February 13, 1996, shall be, and is, **GRANTED.** It is further

**ORDERED** that the conviction of defendant Ron Gillis, for violation of 28 U.S.C. § 924(c)(1), possession of a firearm during a drug trafficking offense, shall be, and is, **REVERSED AND VACATED.** It is further

**ORDERED** that, upon completion of his sentence imposed for Count I (conspiracy) and upon his release from custody, defendant Ron Gillis shall comply with all conditions of supervised release as set forth in this Court's Judgment and Sentence of April 20, 1990.

### ORDER FINDING DEFENDANT'S MOTION FOR RELEASE ON BAIL TO BE MOOT

The Court has entered its Order Granting Motion Under 28 U.S.C. § 2255 and Order Reversing and Vacating Sentence. Because of that disposition, the Court finds that the defendant's Motion for Release on Bail is now MOOT. It is therefore

**ORDERED** that the defendant's Motion for Release on Bail is **MOOT.**