**UNITED STATES of America,**
**Plaintiff,**

v.

**Kevin L. SHULER and Ira**
**L. Moore, Defendants.**

**No. Crim. 98–CR–193–WM.**

United States District Court,
D. Colorado.

Jan. 22, 1999.

## MEMORANDUM OPINION AND ORDER

MILLER, District Judge.

This matter is before me on the government's Motion for Reconsideration of October 21, 1998 Order Dismissing Count 2 of the Indictment, defendant Moore's Motion to Dismiss Count 3 of the Superseding Indictment, and defendant Shuler's Motion to Adopt Motion of Co-defendant to Dismiss Count 3 of the Superseding Indictment. For the reasons set forth below, I deny the government's Motion and grant the defendants' Motions to Dismiss.

### Background

Following evidentiary hearings, I partially granted the defendants' Motion to Dismiss Count 2 of the original Indictment charging the defendants with the unlawful use or carrying of the following guns during a crime of violence in violation of 18 U.S.C. § 924(c)(1):

a Bushmaster model XM15E2S, semiautomatic assault weapon, bearing serial number LO95157; a Bushmaster model XM15E2S semiautomatic assault weapon, bearing serial number LO95046; a Bushmaster model XM15E2S semiautomatic assault weapon, bearing serial LO91933, equipped with a firearm silencer; a Sig Sauer model P220, .45 caliber pistol, bearing serial G287816; a Heckler and Koch model P7M8, 9mm caliber pistol bearing serial number 16–126248; a Heckler and Koch model Mark 23, .45 caliber pistol, bearing serial number 23–4085; a Bushmaster model XM15E2S semiautomatic assault weapon, bearing serial number LO95130; and a Heckler and Koch, model MP–5A3 machine gun, bearing serial number C307859.

(Hereafter "Stolen Firearms.")

I specifically excluded from my oral ruling the pistol which the evidence indicates the defendants brought to and used in carrying out the crime, a Norinco Model T54 Caliber 9 mm pistol, bearing Serial No. 00914 (Norinco pistol).

Following my ruling, the government filed a Superseding Indictment alleging § 924(c)(1) violations in Count 2 (limited to the Norinco pistol) and Court 3 (including only the Stolen Firearms).

Defendants now join in moving to dismiss Count 3 of the Superseding Indictment upon the same grounds asserted in defendant Moore's original motion to dismiss.[1] Defendants also point out that the Superseding Indictment renders the government's Motion for Reconsideration moot. I agree, but do consider the authority cited by the government in that Motion as well as all other briefs and arguments of the parties in resolving this dispute.

From the evidence presented to me in the motions hearings, the relevant facts are not in dispute. The defendants allegedly committed armed robbery of a gun store, bringing the Norinco pistol to the scene, using it to threaten the store owner, and stealing the Stolen Firearms as well

---

1. Defendants challenge only the charge that they violated 924(c)(1) with respect to the Stolen Firearms. They do not seek dismissal of the current Count 2.

as some ammunition. The parties have stipulated that the Stolen Firearms and ammunition were simply transported out of the store as loot of the robbery. None of the Stolen Firearms were armed with ammunition, nor were they brandished or used to threaten the store owner or to otherwise effectuate the robbery.

### Issue.

The issue presented is whether defendants' alleged conduct violated 18 U.S.C. § 924(c)(1), which, at the time of the offense, in relevant part provided:

> "Whoever, *during and in relation to any crime of violence* ... *uses or carries a firearm,* shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years ... and if the firearm is machine gun ... to imprisonment for 30 years...."

(Emphasis added.)

For purposes of this Order, I will assume that the government can prove that the Norinco pistol was a "firearm" used or carried "during and in relation to" that "crime of violence." If proved, the defendants would, in addition to the sentence prescribed for the robbery, be sentenced to an additional five years of imprisonment.[2] 18 U.S.C. § 924(c)(1). That is not disputed. What is at issue is whether defendants face additional sentences, including one up to 30 years, because the object of the robbery was firearms, including a machine gun.

The issue may be stated as follows: Can the firearms stolen as the object of a crime of violence also be considered firearms "carr[ied]"[3] "during and in relation to [that] crime of violence" in violation of § 924(c)(1)?

The elements required to be proved for a conviction under § 924(c)(1) are:

1. Defendants committed a crime of violence or drug trafficking;

2. Defendants "carried" a firearm; and

3. The carrying of the firearm was "during and in relation to" the underlying crime.

*United States v. Richardson,* 86 F.3d 1537, 1546 (10th Cir.1996).

There is no real dispute that two elements are met. First, armed robbery is a crime of violence and, for purposes of this decision, defendants are assumed to have committed the crime. Second, the defendants took possession of the Stolen Firearms and transported or moved them, satisfying the definition of "carry" under section 924(c)(1). *Id.* at 1548; *United States v. Durham,* 139 F.3d 1325, 1335 (10th Cir.1998). It is also beyond dispute that defendants' carrying of the weapons occurred "during" that crime.

Therefore, the issue is refined to whether the carrying of the Stolen Firearms was "in relation to" the crime of violence within the intended reach of section 924(c)(1).

### Discussion

Defendants assert that section 924(c)(1) was not intended to cover firearms which were the object of the robbery and which were not actively employed or used to facilitate the robbery. The government argues that the section is directly applicable because the Stolen Firearms were "carried" "during" the armed robbery, claiming that they were clearly "related to" the robbery. I find no authority deciding this particular issue and I must determine whether the statute applies to these circumstances.

Essentially, the government argues that the statute's plain meaning applies to the theft of firearms. The fact is, however, that, apart from the obvious situation where the firearm is actually used as an instrumentality in the crime, such as the Norinco pistol here, there has been much legal dispute of the statute's applicability

---

2. Section 924(c)(1) specifies that the term of imprisonment imposed thereunder shall be consecutive to any other term of imprisonment.

3. Count 3 of the Superseding Indictment charges only that defendants carried the Stolen Firearms, thereby excluding an allegation of "use."

in the myriad circumstances where a firearm might be somehow connected to a crime of violence or drug trafficking. Section 924(c)(1) has spawned a recent triad of Supreme Court decisions, commencing with *Smith v. United States*, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (use of gun as barter for drugs is a § 924 offense), followed by *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (mere possession not "use"; must "actively employ" the firearm), and *Muscarello v. United States*, 524 U.S. 125–, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) ("carry" includes firearm in vehicle).

Similarly, numerous Tenth Circuit decisions strongly suggest that the statute's meaning is less than plain or obvious in many cases. *See United States v. Smith*, 82 F.3d 1564 (10th Cir.1996);[4] *United States v. Spring*, 80 F.3d 1450 (1996) (effect of *Bailey* on "carry" prong of § 924(c)(1)); *United States v. Miller*, 84 F.3d 1244 (10th Cir.1996) (meaning of "during and in relation to").

Indeed, the statute was recently amended, supposedly in response to the *Bailey* decision. The amendments maintain the language at issue here, but add an alternative to the "use" and "carry" prongs, namely "possess[ion]" "in furtherance of [a crime of violence]." Criminal Use of Guns Act, Pub.L. No. 105–386, § 1, 112 Stat. 3469 (1998).[5] The crime alleged here antedates the amendment, rendering it inapplicable to this case. Whether the amendment will resolve any of the § 924(c)(1) interpretation problems remains to be seen.

It is with this background of dispute—if not uncertainty—of the meaning of the language of the statute that I must determine whether Congress intended § 924(c)(1) to cover the aggravated theft of firearms. To do so I look first to the section's legislative history to determine its purpose.

The Supreme Court "has described the statute's basic purpose broadly, as an effort to combat the 'dangerous combination' of 'drugs and guns.' " *Muscarello v. United States*, 524 U.S. at ——, 118 S.Ct. at 1916 (quoting *Smith v. United States*, 508 U.S. at 240, 113 S.Ct. at 2060). The same conclusion should apply to a combination of theft and guns, as the legislative history makes manifest. According to the statute's chief sponsor, Representative Poff, the provision seeks "to persuade the man who is tempted to commit a Federal felony to leave his gun at home." *Id.* (quoting 114 Cong.Rec. 22231 (1968)).

In other words, if one is to commit a crime, one should do it without firearms. Applying that purpose to the circumstances here highlights the difficulty in this case. Defendants did not leave the Norinco pistol at home and therefore violated § 924(c)(1). With regard to the Stolen Firearms, however, defendants did not bring or carry them from home and did not use or employ them to facilitate the crime of robbery as alleged in Count 3. Should I nevertheless conclude § 924(c)(1) applies simply because the Stolen Firearms were ultimately carried during a crime of violence?

The government argues in the affirmative, asserting that, pursuant to *Smith v. United States*, the "in relation to" element should be given an expansive reading, the firearms were not "entirely unrelated" to the crime, and, in essence, the Stolen Firearms at least had the potential of facilitating the crime of violence. *Smith v. United States*, 508 at 237–38, 116 S.Ct. 900. The government also argues that actual or po-

---

**4.** A prior decision in *Smith*, 63 F.3d 956 (10th Cir.1995), was vacated by the Supreme Court after its *Bailey* decision. *Smith v. United States*, 516 U.S. 1105, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996).

**5.** The new 18 U.S.C. § 924(c)(1)(A) applies to: "... any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, *or who, in furtherance of such crime, possesses a firearm....* " (Emphasis added.) The new language applies to conduct occurring on or after November 13, 1998, the effective date of the amendment.

tential use of the firearms as a weapon is not the only method of satisfying this requirement, claiming the "in relation to" element is met because the underlying crime could not occur without the taking of the weapons. *See* Motion for Reconsideration, pages 7–8.

■ In effect, the government contends it need not prove an intent to use or potentially use the weapons as part of this particular crime of theft, strongly suggesting that mere possession of firearms suffices. The law is otherwise. *Bailey* establishes that more than mere possession must be shown to convict under the "use" prong. *Bailey v. United States*, 516 U.S. at 143, 116 S.Ct. 501. The same is true for the "carry" prong as well. *Muscarello v. United States*, 524 U.S. at ——, 118 S.Ct. at 1918. Significantly, the Supreme Court stated:

> Had Congress intended possession alone to trigger liability under Section 924(c)(1), it easily could have so provided. This obvious conclusion is supported by the frequent use of the term "possess" in the gun-crime statutes to describe prohibited gun-related conduct. See, e.g., §§ 922(g), 922(j), 922(k), 922(0)(1), 930(a), 930(b).

*Bailey v. United States*, 516 U.S. at 143, 116 S.Ct. 501.

Tenth Circuit authority likewise requires more than mere possession. *See United States v. Spring*, 80 F.3d 1450, 1464 (10th Cir.1996) ("*Bailey* suggests that neither storage nor possession of a gun, without more, satisfies the 'carry' prong of § 924(c)(1)"). The "during and in relation to" element requires evidence that the "defendant *intended the weapon to be available for use* during the drug transaction." *United States v. Miller*, 84 F.3d at 1260 (emphasis added); *United States v. Matthews*, 942 F.2d 779, 783 (10th Cir.1991). *United States v. Richardson*, 86 F.3d 1537, 1548 (10th Cir.1996), informs us that a defendant who avails himself of the weap-

on which plays an integral role in a drug transaction meets that standard. There is no proof here that defendants intended the Stolen Firearms be available for use during the theft, that they availed themselves of the Firearms, or that the Firearms played an integral role other than as the fruit of the theft. Without proof of that intent or other evidence to show the relationship of the Stolen Firearms to the robbery, the government lacks proof of the "relation to" element.

■ When the underlying crime is a drug matter, the Tenth Circuit presumes a relationship or nexus between the firearms and the drug transaction if the defendant has ready access to a firearm because "guns are a ubiquitous part of the drug trade." *United States v. Coslet*, 987 F.2d 1493, 1495 (10th Cir.1993). The presumption can be overcome by presenting evidence that the presence of the weapons was for reasons other than facilitating the transaction. *Id.; United States v. Richardson*, 86 F.3d at 1548. If no evidence in rebuttal is presented, proof of the "in relation to" element may be satisfied by this presumption. In this robbery case, however, there is no authority for such judicial presumption. Common knowledge tells us that guns are not a ubiquitous part of theft. Accordingly, the government cannot rely on a presumed nexus to satisfy its burden of proving defendants carried the Stolen Firearms "in relation to" the robbery. Nor should the mere possibility that the weapons could have been armed and used to facilitate the robbery result in liability under § 924(c)(1). Mere access to the firearms, without more, does not suffice.[6] *United States v. Matthews*, 942 F.2d at 783.

To bolster its arguments, the government chooses to rely on inapposite authority construing sentence enhancements under the United States Sentencing Guidelines. Section 4B1.4(b)(3)(A) pro-

---

**6.** Of course, if this were a drug transaction, then ready access to a firearm does suffice because of the presumed nexus to the drug crime. *United States v. Coslet*, 987 F.2d at 1495.

vides an enhancement "if the defendant used or *possessed* the firearm or ammunition *in connection with a crime of violence.*" (Emphasis added.) Similarly, section 2K2.1(b)(5) provides for a four-level enhancement if the defendant "used or *possessed* any firearm or ammunition *in connection with another felony....*" (Emphasis added.) In particular, the government cites three cases where enhancement was made on the basis of firearms stolen during the crime of violence, arguing by analogy that defendants violated section 924(c)(1).[7] *See United States v. Young,* 115 F.3d 834 (11th Cir.1997); *United States v. Armstead,* 114 F.3d 504 (5th Cir.1997); *United States v. Guerrero,* 5 F.3d 868 (5th Cir.1993). Although section 924(c)(1) is recognized as being analogous, *United States v. Gomez–Arrellano,* 5 F.3d 464, 466 (10th Cir.1993), such cases are clearly distinguishable because the standard of "possession" "in connection with" the underlying crime is much different. Possession alone of the weapons "in connection with" the armed robbery may well be sufficient for enhancement under the Guidelines. As indicated above, it clearly does not satisfy section 924(c)(1).

My conclusion is strengthened by the legislative history of the 1998 Amendment to the Section which evinces a legislative intent to reject a proposition that mere possession suffices for consecutive sentence enhancement. In its initial version,[8] the "uses or carries" language was replaced by "possesses," "brandishes" or "discharges" language to reverse the "restrictive effect of the *Bailey* decision by using the word 'possession' which has a broader meaning than either 'uses' or 'carries'." H.R.Rep. No. 105–344, 105th Cong., 1st Sess., pt. 1 (1997). Ultimately, the existing language was retained and the new alternative of possession "in furtherance of" the crime of violence was added. This indicates legislative intent to reject a lesser standard of possession alone as a basis for enhancement. If anything, the legislative history suggests a higher standard:

> The Committee recognizes that the distinction between "in furtherance of" and "during and in relation to" is a subtle one, and may initially prove troublesome for the prosecutors. Nevertheless, the Committee believes that "in furtherance of" is a slightly higher standard, and encompasses the "during and in relation to" language....
>
> The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. *The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence....*

*Id.,* pt. 12 (emphasis added).

Thus, no matter how appealing the simplicity of the government's argument may be, there is significant legislative history and precedent which suggests the taking of possession of the weapons as loot of armed robbery, without more, is not the action intended by Congress to result in a consecutive sentence under section 924(c)(1).

■ Finally, in my search for the intended meaning and purpose of the statutory scheme, I should look carefully at the context of the language. *Bailey v. United States,* 516 U.S. at 145, 116 S.Ct. 501. Words take on different meanings depending upon their context. There is a danger in relying on the supposed plain meaning of isolated words. Long ago the wisdom of Learned Hand admonished that "there is no more likely way to misapprehend the meaning of language—be it in a constitution, a statute, a will or a contract—than to read words literally, forgetting the object which the document as a whole is meant to secure." *Central Hanover Bank & Trust*

---

7. The question is not before me whether, assuming defendants are found guilty of armed robbery, their sentences may be enhanced under one of these Guidelines provisions.

8. H.R.Doc. No. 424.

*Co. v. Commissioner of Internal Revenue,* 159 F.2d 167, 169 (2d Cir.1947). Looking at the context of section 924(c), one finds, as the court in *Bailey* observed, many instances where possession alone triggers liability. *See, e.g.,* § 922(g). I conclude that Congress's failure to delineate section 924(c)(1) liability on possession alone was intentional. *See Bailey v. United States,* 516 U.S. at 143, 116 S.Ct. 501.

More pertinent to the particular issues of this case, section 924(m) provides: "A person who steals any firearm from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, shall be fined under this Title, imprisoned not more than ten years, or both."

This makes manifest Congress's intention to punish the theft of firearms and demonstrates a Congressional awareness of the issue presented by this case. Accordingly, Congress could have easily included the theft of firearms in subsection (c) by either express language or cross reference to subsection (m). It did not do so.

I can only speculate why the government did not indict the defendants under section 924(m),[9] but it is noteworthy that Count Four of the Indictment already charges the defendants with a violation of section 922(*o*), which makes it "unlawful for any person to transfer or possess a machine gun." This language again evidences a Congressional awareness of the issues presented here and an intent to punish differently than the government would urge.

In a similar vein, if Congress intended to make theft the basis for section 924(c) penalties, it could easily have done so in plain language similar to that used in the United States Sentencing Guideline which provide for an increase in offense level for robbery "if a firearm ... was taken...." Section 2B3.1(b)(6), U.S.S .G.

Viewing section 924(c) in this context, particularly with the demonstrated aware-

ness of Congress of the theft of firearms, including machine guns, I heed Judge Hand's admonition and do not fall prey to the government's plain language argument. Instead, I conclude, consistent with the section's legislative history, Tenth Circuit authority, and the statutory context, that the consecutive sentence provision of section 924(c) does not apply to the theft of firearms when those firearms were never used or intended to be used during and in relation to the theft.

 My conclusion is buttressed by some general principles of construction. Where, as is certainly the case here, there is some doubt as to the applicability of the statutory section, the doubt should be resolved in favor of the defendant. *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 284–285, 98 S.Ct. 566, 54 L.Ed.2d 538 (1978). Further, the prudent rule of construction is to strictly construe penal laws. *Dowling v. United States,* 473 U.S. 207, 213–214, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). Where, as here, one must choose between alternatives, choice of the harsher alternative requires that Congress speak "in language that is clear and definite." *Id.* at 215, 105 S.Ct. 3127. The *Dowling* Court tells us that this basic principle predates Chief Justice Marshall who observed:

> The Rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.

*Id.* at 213–214, 105 S.Ct. 3127 (quoting *United States v. Wiltberger,* 5 Wheat. 76, 95, 5 L.Ed. 37 (1820)). The Congress has had ample opportunity to clearly define

---

9. It is interesting that neither the government nor defendants mention subsection (m) or its relationship to subsection 924(c)(1).

the crime the government seeks to construct here; it has not done so.

Accordingly, it is ordered as follows:

1. Defendant Shuler's Motion to Adopt is granted;

2. Defendants' Motion to Dismiss Count 3 is granted;

3. The government's Motion for Reconsideration is denied; and

4. The Motion for Ruling is denied as moot.